## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **H.G., a minor, by and through his parent** | : | **CIVIL ACTION** |
| **and natural guardian, BARBARA DAVIS** | : | |
| *Plaintiff* | : | **NO. 13-1976** |
| | : | |
| **v.** | : | |
| | : | |
| **UPPER DUBLIN SCHOOL DISTRICT** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    APRIL 17, 2015

# MEMORANDUM OPINION

## INTRODUCTION

H.G. is a junior high school student with a disability who is eligible for special education services. By and through his parent and natural guardian, Barbara Davis ("Parent"), H.G. (along with Parent, hereinafter collectively referred to as "Plaintiff") filed this action pursuant to the *Individuals with Disabilities Education Improvement Act* ("IDEIA"), 20 U.S.C. §1400 *et seq.*,[1] 29 U.S.C. §729, commonly known as §504 of the Rehabilitation Act of 1973 ("§504" and/or "RA"), the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.* ("ADA"), 28 C.F.R. §35.130, and Pennsylvania Special Education regulations, 22 Pa. Code §14.145, against the Upper Dublin School District ("Defendant" or "District"), challenging the decision issued by a Pennsylvania Special Education Hearing Officer, who found that the District (a) conducted an appropriate evaluation of H.G., (b) proposed an appropriate change of placement, (c) would not be required to provide the *Independent Educational Evaluation* ("IEE") sought by Parent, and (d) may immediately implement its proposed *Individualized Education Program* ("IEP").

---

[1] The Individuals with Disabilities Education Act ("IDEA") was amended and renamed to the IDEIA, effective July 1, 2005. *See* Pub. L. No. 108-446, 118 Stat. 2715 (2004). This Court will refer to the Act as the IDEIA throughout this Memorandum Opinion.

The parties filed cross-motions for judgment on the administrative record, [ECF 24, 25], and respective responses. [ECF 34, 36]. These motions were referred to United States Magistrate Judge Lynn A. Sitarski for a Report and Recommendation ("R & R"), which was issued on October 17, 2014. [ECF 37]. Thereafter, Plaintiff filed Objections to the R & R, [ECF 38], and the District filed a response to the Objections. [ECF 39]. This matter has been fully briefed and is ripe for disposition.[2]

After a careful review of the R & R, all filings pursuant thereto, and the Hearing Officer's decision, for the reasons set forth herein, this Court approves and adopts the Magistrate Judge's recommendation, overrules, *in part*, Plaintiff's Objections, denies Plaintiff's motion for judgment on the administrative record, and grants Defendant's motion for judgment on the administrative record.

**BACKGROUND**

On April 15, 2013, Plaintiff filed a complaint against the District which seeks the reversal of the Hearing Officer's (administrative) decision and requests an order directing the District (1) to provide H.G. with a *Free Appropriate Public Education* ("FAPE") in the least restrictive, most integrated setting appropriate to H.G.'s needs, (2) to provide an IEE at public expense, (3) to reconvene H.G.'s IEP team to consider alternatives to the 2012 IEP, including the use of supplementary aids and services, and (4) to pay an award of reasonable attorney's fees and costs. The District filed an answer with affirmative defenses on June 21, 2013. [ECF 4].

After discovery was completed, Plaintiff filed an amended motion for permission to supplement the administrative record with additional evidence. [ECF 16]. Plaintiff's motion was

---

[2] Because the parties have thoroughly briefed the issues involved in this matter, this Court finds that oral argument is not necessary and, therefore, Plaintiff's December 9, 2014 informal request for oral argument is denied consistent with Federal Rule of Civil Procedure ("Rule") 78(b).

granted subject to a later determination on the admissibility and relevancy of additional evidence. [ECF 22]. Thereafter, Plaintiff filed 29 additional exhibits. [ECF 26, 27, 28].[3] Defendant submitted one additional expert report. Both parties filed written objections to the supplemental evidence the other sought to introduce. [ECF 31, 32, 35].

On June 2, 2014, the District filed its motion for judgment on the administrative record, contending that its reevaluation of H.G. was procedurally and substantively sound. [ECF 24]. The District urged this Court to affirm the administrative decision finding that the 2012 IEP was appropriate and enforceable. The District also noted that currently, and until the instant motions are decided, H.G. is to follow the 2009 IEP.[4]

On June 3, 2014, Plaintiff filed a motion for judgment on the administrative record, as supplemented by additional evidence, arguing that the Hearing Officer erred in that (1) the 2012 IEP denies H.G. a FAPE under the IDEIA because it does not allow H.G. to be educated with non-disabled students to the maximum amount possible and denies H.G. meaningful educational benefit; (2) the 2012 IEP violates (a) §504 of the RA because there was no finding that placement in special education classes was necessary to provide H.G. with educational benefit and (b) Title II of the ADA because the District failed to consider the use of auxiliary services, such as Assistive Technology; and (3) the decision to uphold the 2012 IEP was replete with legal error which (a) relied on a misguided belief that "a student performing on a 'low level' cannot benefit from being instructed in age-appropriate grade-level classes," (b) failed to consider whether H.G. could be satisfactorily educated in general education classes for reading and math,

---

[3] As noted by the Magistrate Judge, Plaintiffs actually submitted 31 additional exhibits, but the first two are the affidavits of Plaintiff's counsel and Parent. The Magistrate Judge did not consider the affidavits additional evidence. *See* R & R 40 n. 23.

[4] Decision ¶42; *see also* 20 U.S.C. §1415(j) (during the pendency of any proceedings conducted, the child shall remain in the then-current educational placement).

as required by the IDEIA, 20 U.S.C. §1412(a)(5), and (c) ignored evidence calling into question the validity of the District's 2011 reevaluation. [ECF 25].

As stated, the parties' cross-motions for judgment on the administrative record and the respective responses were referred to the Magistrate Judge on June 11, 2014, for an R & R. The Magistrate Judge essentially recommended that the administrative decision be upheld. Plaintiff filed an extensive list of Objections and the District filed a response to the Objections.

## THE INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT ("IDEIA") STATUTORY FRAMEWORK

The IDEIA's predecessor statute[5] was enacted in response to a congressional finding that a majority of children with disabilities did not receive appropriate educational services. *Lebron v. North Penn Sch. Dist.*, 769 F.Supp.2d 788, 791 (E.D. Pa. 2011) (citing *Oberti v. Bd. of Educ. of the Borough of the Clementon Sch. Dist.,* 995 F.2d 1204, 1213 (3d Cir. 1993)); *see also* 20 U.S.C. §1400(c)(2). Today, the IDEIA authorizes federal grants to states on the condition that the states provide appropriate education to children with disabilities in accordance with the Act. 20 U.S.C. §1411. The Act describes how states should evaluate eligible children's educational needs and develop Individualized Education Programs or IEPs. §§1412–1414. An IEP is a written document that is tailored to a particular child's unique needs and is the "primary mechanism" for delivering a Free Appropriate Public Education or FAPE. §1414(d); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012). The IEP describes the child's present abilities and challenges, sets measurable goals and methods to measure the child's progress towards those goals, and prescribes services and modifications for the child. 34 C.F.R. §300.320(a); *see also* 22 Pa. Code §14.102(a)(2)(xxvii) (incorporating 34 C.F.R. §300.320 by reference).

---

[5] The Education of the Handicapped Act, 20 U.S.C. §§1401-1462 ("EHA").

4

Although a state is neither required to maximize the potential of every handicapped child, nor provide an eligible child with services designed to provide the "absolute best" education, *K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F.Supp.2d 806, 814 (E.D. Pa. 2011), it must supply an education that provides "significant learning" and "meaningful benefit." *M.R.*, 680 F.3d at 269 (citing *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010)); *see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 247 (3d Cir. 1999); *J.E. v. Boyertown Area Sch. Dist.*, 834 F.Supp.2d 240, 253 (E.D. Pa. 2011). "[T]he provision of merely more than a trivial educational benefit" is insufficient. *L.E. v. Ramsey Bd. of Educ.,* 435 F.3d 384, 390 (3d Cir. 2006) (internal marks and citations omitted).

## LEGAL STANDARD OF REVIEW OF THE ADMINISTRATIVE RECORD AND REPORT AND RECOMMENDATION

In an IDEIA action, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *Lebron*, 769 F.Supp.2d at 793. District courts employ a "modified *de novo*" review of the administrative proceedings, *S.H. v. State-Operated Sch. Dist. of Newark,* 336 F.3d 260, 270 (3d Cir. 2003), and the administrative agency's factual findings are given "due weight." *Shore Regional High Sch. Bd. of Educ. v. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004). A reviewing court defers to those factual findings unless the court "can point to contrary non-testimonial extrinsic evidence on the record." *S.H.,* 336 F.3d at 270; *Carlisle Area Sch. v. Scott P. by & Through Bess P.,* 62 F.3d 520 (3d Cir. 1995). While this standard is not as deferential as that used to review other agency actions, courts are not free to "substitute their own notions of sound education policy for those of the educational agencies they review." *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 757 (3d Cir. 1995) (citing *Bd. of Educ. v. Rowley,* 458 U.S.

5

176, 205-06 (1982)). A hearing officer's conclusions of law and legal standards applied, however, are subject to plenary review. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009)); *D.S.,* 602 F.3d at 564.

Where the district court hears additional evidence, it is "free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." *S.H.*, 336 F.3d at 270 (citing *Oberti*, 995 F.2d at 1220). Where the district court does not hear additional evidence, it must find support for any factual conclusions contrary to the hearing officer's in the record before it. Moreover, the court must explain why it does not accept the hearing officer's findings of fact. *Id.*; *Susan N.*, 70 F.3d at 757.

The party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged. *M.R.*, 680 F.3d at 270 (citations omitted). As the Supreme Court noted in *Schaffer v. Weast,* 546 U.S. 49, 53 (2005), "[t]he burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who . . . seeks to change the present state of affairs." *Id.* at 56 (quoting McCormick on Evidence §337, at 412). Under the IDEIA, it is the party "aggrieved by the findings and decision" of the hearing officer that seeks to change the present state of affairs. *See* 20 U.S.C. §1415(i)(2)(A). "Absent some reason to believe that Congress intended otherwise," the burden of persuasion falls where it usually does, on the party seeking relief. *Schaffer*, 546 U.S. at 57-58.

Lastly, a district court judge may designate dispositive motions to a magistrate judge for proposed findings of fact (a report) and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B). Within 14 days after being served with the magistrate judge's report, any party

6

may file objections. §636(b)(1)(C). When disposing of any objections to a magistrate judge's report and recommendation, the district court shall make a *de novo* determination of those portions of the report or recommendations to which objections are made. *Id; Colon ex rel. Disen-Colon v. Colonial Intermediate Unit 20*, 443 F.Supp.2d 659 (M.D. Pa. 2006) (citing *Henderson v. Carlson*, 812 F.2d 874, 877 (3d Cir. 1987)). The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The court may receive further evidence or recommit the matter to the magistrate judge with additional instructions. 20 U.S.C. §636(b)(1)(C).

### *The Administrative Record*

The factual findings in the administrative decision, which are deemed to be *prima facie* correct,[6, 7] complemented by the findings in the R & R, are summarized as follows:

> At the time of the due process hearings, H.G. was a 14-year old resident of the District and, undisputedly, eligible for special education services.[8] This conclusion is based on the facts that when H.G. was 15 months of age, he was diagnosed as suffering a genetic disorder identified as Fragile X Syndrome.[9, 10] He was later also diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").[11] With these two diagnoses, H.G. qualifies as a child with a disability within the meaning of the IDEIA, 20 U.S.C. §1401(3)(A), and an individual with a disability within the meaning of §504 of the RA, and Title II of the ADA, 42 U.S.C. §1213(2).
>
> When H.G. transferred to the District in October 2008, he was in third grade. H.G.'s IDEIA eligibility was based on the disability categories of "Other Health Impairment" and "Speech/Language Impairment."[12] The following year,

---

[6] *See S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) ("Factual findings from the administrative proceedings are to be considered prima facie correct.").

[7] In the Hearing Officer's decision, findings of fact are set forth in enumerated paragraphs, while conclusions of law are not; thus, citations to the decision are specified as to paragraph or page number.

[8] Decision ¶1.

[9] *Id*. at ¶4.

[10] Characteristics of Fragile X Syndrome include: visual defensiveness/difficulty processing a lot of material on a page; physical manifestations of excitement, such as hand flapping and inappropriate vocalizations; verbal perseveration; difficulties with visual motor planning; and sensory regulation issues. Decision ¶5.

[11] *Id*. at ¶3.

[12] *Id*. at ¶2.

H.G.'s October 2009 IEP ("2009 IEP") provided for the District to use grade level curriculum when instructing him, with the ability to pull him out of the general education classroom for up to 1.25 hours per day for support services. The 2009 IEP also contained modifications and supplemental aids and services, or *Specially Designed Instruction* ("SDI") for many parts of H.G.'s curriculum.[13] The 2009 IEP was the last IEP to which Parent agreed and is currently being implemented.[14]

### The School District's 2011 Reevaluation

In March 2011, the District filed a due process request to allow it to proceed with a comprehensive reevaluation of H.G. without parental consent. In July 2011, after multiple hearings, the then-hearing officer found in favor of the District, and allowed it to conduct cognitive and achievement testing, as well as assessments of H.G.'s adaptive functioning. In October 2011, the District's school psychologist overseeing H.G.'s reevaluation researched standardized tests appropriate for H.G.'s disability, determined that there is no particular formula for selecting appropriate assessments, and selected specific tests to try to be "as comprehensive as possible" and capture "different theories of intelligence."[15] The school psychologist organized the assessments in a manner thought to be most conducive to H.G.'s success, *e.g.*, testing in shorter sessions over a longer period of time, allowing frequent breaks, and avoiding use of the word "test," which made H.G. anxious.[16] The reevaluation also included observation of H.G.'s performance in class and social settings, as well as behavioral rating scales submitted by H.G.'s teachers.[17]

In December 2011, the District released its Reevaluation Report, which described H.G. as exhibiting "significant deficits in all areas of cognitive, academic, adaptive, [communicative] and social functioning," and indicated that, under Pennsylvania Special Education regulations, H.G. qualified as a student with a disability. The Reevaluation Report recommended placing H.G. predominantly in the special education classroom and allowing H.G. to remain in the general education environment for electives and lunch.[18]

### The School District's Proposed 2012 IEP

After several IEP meetings, the District proposed in January 2012, an IEP ("2012 IEP") that provided for the following: H.G.'s participation in general education for 56 percent of the school day (a 25 percent reduction from the 2009 IEP); special education placement for math, reading, and language arts; and placement in co-taught, grade level science and social studies classes.[19] Parent did

---

[13] *See* S-1.
[14] Decision ¶42.
[15] R & R 4.
[16] *Id.* at 4-5.
[17] *Id.* at 5.
[18] *Id.* at 6.
[19] *Id.* at 7; *see also* S-33.

not approve of the 2012 IEP and sought mediation. The District complied with Parent's request, and mediation was held on April 10, 2012, without success.[20]

While mediation was pending, Parent requested a District-funded IEE to be conducted by two experts in Fragile X Syndrome located in Colorado. On February 22, 2012, the District refused to conduct the IEE on the grounds that its December 2011 reevaluation was complete and sufficient to plan an educational program for H.G.[21] Parent, thereafter, obtained a private IEE by psychological/educational consultant, Edna Barenbaum, Ph.D.[22] Dr. Barenbaum observed H.G. in school for five hours on March 28, 2012, and administered in her office the following evaluations in two and half hours: the Test of Non-Verbal Intelligence, Fourth Edition (TONI-IV), the Peabody Picture Vocabulary Test, Fourth Edition (PPVT-IV), and three diagnostic achievement subtests.[23] Based on the results of these assessments and observations, Dr. Barenbaum concluded that H.G. was functioning in the low average range of cognitive ability, and that his academic scores were considerably higher than the District's test results indicated.[24]

## DISCUSSION

In the R & R, the Magistrate Judge specifically recommended that this Court (1) find in favor of the District because Plaintiff failed to meet the burden of persuasion to show that the District's 2011 reevaluation and the resulting 2012 IEP were inappropriate, (2) dismiss the ADA and RA claims as not administratively exhausted, (3) deny, in part, Plaintiff's motion to supplement the record on the basis that the proffered additional evidence is cumulative and/or irrelevant, and (4) deny the District's supplemental evidence, as irrelevant.[25] Plaintiff disagreed with these recommendations and filed the following Objections to the R & R:

(1) the Magistrate Judge applied an incorrect standard of review;

(2) the Magistrate Judge improperly refused to review and determine the appropriateness of H.G.'s educational programs created after the close of administrative proceedings;

---

[20] R & R 7.

[21] R & R 8.

[22] Decision ¶33.

[23] *Id.* at ¶35.

[24] *Id.* at ¶¶33, 37; *see also* P-11.

[25] *See infra* 35 n. 76.

9

(3) the Magistrate Judge erred in declining to admit the Plaintiff's expert reports;

(4) the Magistrate Judge erred in refusing to admit and consider evidence of H.G.'s progress in general education classes;

(5) the Magistrate Judge erred in refusing to admit H.G.'s progress reports from seventh grade;

(6) the Magistrate Judge erred in finding the 2012 IEP appropriate even though the goals in the IEP were too basic for H.G.;

(7) the Magistrate Judge erred in concluding that the District's obligation to develop appropriate goals for H.G. in the 2012 IEP was merely a "procedural" and not a substantive obligation;

(8) the Magistrate Judge erred in concluding that the District's obligation to consider the supplementary aids and services that could be provided to H.G. as an alternative to removal from regular class was merely a "procedural" and not a substantive obligation;

(9) the Magistrate Judge erred in holding that the District took adequate steps to accommodate H.G. in general education classes during the development of the 2012 IEP;

(10) the Magistrate Judge erred in refusing to consider the District's continuing failure to consider the full range of supplementary aids and services and make reasonable efforts to support H.G. in regular classes;

(11) the Magistrate Judge erred in finding the District's evaluation appropriate;

(12) the Magistrate Judge improperly invoked IDEA's exhaustion requirement as a reason not to consider evidence of the District's failure to implement the Specially Designed Instruction in H.G.'s IEP;

(13) the Magistrate Judge improperly ignored the evidence of the District's failure to implement the Specially Designed Instruction in H.G.'s IEP during sixth grade;

(14) the Magistrate Judge improperly ignored the evidence of the District's failure to implement the Specially Designed Instruction in H.G.'s IEP during seventh and eighth grades;

(15) the Magistrate Judge improperly used evidence of Specially Designed Instruction in H.G.'s 2009 IEP as evidence that the District considered, at the 2012 IEP meeting, whether H.G. could successfully be educated in general education classes with supplementary aids and services;

10

(16) the Magistrate Judge erred by endorsing the Hearing Officer's conclusion, without analysis, that H.G. cannot benefit from being educated in general education classes; and

(17) the Magistrate Judge erred in refusing to admit other additional evidence offered by the Plaintiff.

Undisputedly, a court may decline a *de novo* review if a party's objections to an R & R merely reiterate issues already presented to the magistrate judge. *See Batchelor v. Rose Tree Media Sch. Dist.*, 2013 WL 1776076, at \*4 (E.D. Pa. Mar. 28, 2013), *aff'd*, 759 F.3d 266 (3d Cir. 2014); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (noting *de novo* review of objections is not appropriate when such review would undermine efficiency of the magistrate system); *Morgan v. Astrue*, 2009 WL 3541001, at \*3 (E.D. Pa. Oct. 30, 2009) (explaining an objecting party must do more than "simply rehash [ ] arguments already raised to the magistrate judge" to warrant *de novo* review); *Nghiem v. Kerestes*, 2009 WL 960046, at \*1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in a duplicative review of objections which rehash arguments previously addressed and dismissed by the magistrate judge). Further, it is inappropriate for a district court to address objections previously raised before a magistrate judge; to do so would "defeat any benefit of judicial efficiency gained by the report and recommendation process." *Palmer v. Astrue*, 2010 WL 1254266, at \*2 (E.D. Pa. Mar. 31, 2010) (quoting *Morgan*, 2009 WL 3541001, at \*4).

Here, the Magistrate Judge submitted a comprehensive and thorough 57-page R & R, carefully examining the Hearing Officer's 30-page decision, the voluminous IDEIA record, and both parties' motions for judgment on the administrative record. A review of Plaintiff's 59 pages of Objections reveals that these objections essentially rehash the arguments made in Plaintiff's 48-page motion for judgment on the administrative record. Since the Magistrate Judge has addressed these concerns, this Court need not conduct a *de novo* review. Notwithstanding, this Court will briefly review Plaintiff's Objections, though not necessarily in the order presented,

11

and will consolidate and categorize the Objections, whenever possible, into the following arguments: (1) the standard of review, (2) the District's 2011 reevaluation, (3) the District's proposed 2012 IEP, (4) the RA and ADA claims, and (5) the submission of post-administrative hearing evidence.

### *Standard of Review (Objection 1)*

Because the Magistrate Judge recommended that at least some of the proffered additional evidence be admitted and considered, Plaintiff contends that the Magistrate Judge employed the wrong standard of review, and that a "more expansive, less deferential standard of review" of the Hearing Officer's decision was required.

In support of this contention, Plaintiff cites the established standard that a district court is "free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." *S.H.*, 336 F.3d at 270. Plaintiff misinterprets this standard as necessitating the use of a "more expansive, less deferential" level of review. To the contrary, what is required is an independent review of the administrative record; a review that gives appropriate deference to the Hearing Officer's factual findings, provides reasons for any disagreement with any of the findings, and conducts a plenary review of the Hearing Officer's conclusions of law. It is further noted that "the amount of deference to be afforded the administrative proceedings 'is an issue left to the discretion of the district court,'" *Susan N.*, 70 F.3d at 758 (quoting *Oberti*, 995 F.2d at 1219), but that an appellate court's review of a district court's legal analysis is plenary and "conducted within the general framework of *deference* to state decision-makers" that is dictated by the IDEIA and by the Supreme Court's direction in *Rowley*. *Id.* (citing *Fuhrmann on Behalf of*

*Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1032 (3d Cir. 1993) (citation omitted)) (emphasis provided).

Unlike the district court in *Susan N.*, which ruled on the merits of the appellants' case without evaluating or accepting the proffered additional evidence (which required the Third Circuit to vacate the district court's order and remand for further proceedings), here, this Court provisionally admitted the proffered additional evidence for the Magistrate Judge to thoroughly consider and recommend its inclusion or exclusion, based upon its relevance to the Hearing Officer's decision and the administrative record, which she did.

In further analyzing the standard of review, it is noted that Plaintiff, as the party challenging the District's 2011 reevaluation and proposed 2012 IEP, is not released from the burden of proving, by a preponderance of the evidence, that the Hearing Officer's determinations were incorrect. *See M.R.*, 680 F.3d 270 (a party challenging the administrative decision bears the burden of persuasion before the district court on each claim challenged) (citations omitted); *see also Leighty v. Laurel Sch. Dist.*, 457 F.Supp.2d 546, 553 (W.D. Pa. 2006) ("In light of *Schaffer*, however, it is clear that *Oberti* is no longer the applicable law to the extent that it placed the burden of proof on the school district."). Here, the Magistrate Judge indicated that she conducted a "modified *de novo*" review of the administrative record and that, pursuant to the above standards, the issues of whether the District fulfilled its IDEIA obligations when performing the 2011 reevaluation and providing H.G. a FAPE in the 2012 IEP, are questions of fact which require modified *de novo* review. *See D.S.*, 602 F.3d at 564 ("Whether the evaluation was appropriate is a question of fact."); *J.E.*, 834 F.Supp.2d at 244 ("Whether an IEP is appropriate is a question of fact."); *see also, L.E.*, 435 F.3d at 389 ("'When deciding an IDEIA case, the District Court applies a modified version of *de novo* review and is required to give due weight to

the factual findings made during the course of the administrative proceedings."). As will be discussed, and as concluded by the Magistrate Judge, Plaintiff has not met the required level of persuasion to show that the Hearing Officer's determinations were incorrect and/or not supported by the record. Since Plaintiff has not proven that an incorrect standard of review was applied, Plaintiff's Objection 1 is overruled.

### The School District's 2011 Reevaluation (Objection 11)

Plaintiff objects to the Magistrate Judge's finding that the Hearing Officer's conclusion that the 2011 reevaluation was appropriate. (Plaintiff had made a similar argument regarding the Hearing Officer's conclusion in the motion for judgment on the administrative record.) Plaintiff relies on the testimonies of Dr. Barenbaum and Ms. Walters to argue that H.G.'s demonstrated skill and true capabilities are not reflected in the results obtained by the District and, therefore, the District's reevaluation was not sufficiently comprehensive or accurate to provide an adequate foundation for development of an appropriate IEP for H.G. Plaintiff has also asserted that the District's testing was "excessive" and a "self-serving effort to show that H.G. [was] intellectually disabled, by giving so many tests with the same scores that there would be no way to challenge the District's diagnosis."[26] Plaintiff's Objection is without merit.

Acknowledging that a substantive portion of testimony in the administrative due process hearings was devoted to the reliability and suitability of the District's testing, the Magistrate Judge (as did the Hearing Officer) noted that the District's school psychologist researched how best to test students with Fragile X Syndrome, selected reliable measures based on the research, and administered these measures in a manner conducive to H.G.'s success.[27] Specifically, the school psychologist conducted nine testing sessions, each averaging one hour or less, including

---

[26] R & R 17-18; see also id. at 18 n. 16.

[27] R & R 19; Decision ¶¶10-11.

14

breaks, over a period of two months. These tests were administered to measure cognitive abilities,[28] visual-motor and perceptual skills,[29] academic achievements,[30] speech and language capabilities,[31] and included physical therapy and occupational therapy assessments.[32] In addition, the classroom observations were made by the school psychologist, teachers, and related service providers to assess H.G.'s behavioral, social, emotional, and adaptive functioning.[33]

Further, in response to Parent identifying three individuals who provided instruction to H.G. in community activity settings and knew H.G. well, the school psychologist sent each of these individuals a Teacher/Specialist Narrative Form, asking for a description of H.G.'s work habits, attention/concentration, needs, strengths, behavior and skills in the areas of communication, organization, and social/peer relationships. Not one of them returned the completed forms, despite follow-up inquiries from the school psychologist.[34] Parent also requested that the school psychologist send several standardized rating scales forms to a friend of Parent, Alison Walters, who had privately tutored H.G. in reading and math since June 2010, which the school psychologist did. Ms. Walters also did not return the forms.[35] Based upon the tests and assessment results showing significant deficits in all areas of cognitive, academic, and adaptive functioning, the school psychologist concluded that H.G. meets the criteria in

---

[28] Wechsler Intelligence Scale for Children-Fourth Edition (WISC-IV Integrated); Kaufman Brief Intelligence Test-Second (KABC-II); and Comprehensive Test of Non-Verbal Intelligence-Second Edition (CTONI-II). Decision ¶14.

[29] Beery-Butenica Developmental Test of Visual-Motor Integration-Fifth Edition (Beery VMI, Fifth Edition); Bender Gestalt II and two subtests of the Developmental Neuropsychological Assessment, Second Edition (NEPSY-II). Decision ¶16.

[30] Wechsler Individual Achievement Test-Third Edition (WIAT-III); Critical Reading Inventory (CRI); and Yopp-Singer Test of Phonological Awareness. Decision ¶18.

[31] Clinical Evaluation of Language Fundamentals-Fourth Edition (CELF-4); and Peabody Picture Vocabulary Test, Fourth Edition (PPVT-IV). Decision ¶22.

[32] Decision ¶24.

[33] Behavior Assessment System for Children-Second Edition (BASC-2); Behavior Inventory of Executive Functions (BRIEF); Vineland-II Adaptive Behavior Scales; and Student Interview/Self Report. Decision ¶26.

[34] Decision ¶30.

[35] Id. at ¶31.

15

Pennsylvania and federal Special Education Regulations for identification in the intellectually disabled category, functioning in the moderate range of mental retardation.[36]

In the interim, Parent obtained the private evaluation from Dr. Barenbaum, who assessed H.G. in her office with Parent present, using the PPVT-IV, the TONI-IV, and three of 11 subtests of the Diagnostic Achievement Battery-3, an achievement test that Dr. Barenbaum helped to develop and standardize.[37] This testing in her office took approximately two and a half hours; and she further observed H.G. for approximately five hours at school. Based on her findings, Dr. Barenbaum concluded that H.G. functioned in the low average range of cognitive ability, that the results of the achievement tests she administered were considerably higher than the District's results, and that H.G.'s functioning in reading and math placed H.G. at a higher level than the District's evaluation results indicated.[38]

The requirements for a school district's evaluation of a student with a disability are codified at 34 C.F.R. §300.304. Specifically, a school district must "[u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child,"[39] and utilize "technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors."[40] Tests are to be administered by "trained and knowledgeable personnel"[41] in a form "most likely to yield accurate information on what the child knows and can do academically, developmentally, and functionally."[42] Results should "accurately reflect the child's aptitude or

---

[36] *Id.* at ¶32.
[37] *Id.* at ¶35.
[38] *Id.* at ¶¶37, 40.
[39] 34 C.F.R. §300.304(b)(1).
[40] §300.304(b)(3).
[41] §300.304(c)(1)(iv).
[42] §300.304(c)(1)(ii).

16

achievement level or whatever other factors the test purports to measure,"[43] as well as "assess the child in all areas related to the suspected disability."[44]

Plaintiff contends that the District's testing only sought to highlight H.G.'s disabilities, and did not focus on H.G.'s capabilities. In support, Plaintiff relies on Dr. Barenbaum's opinion testimony that the standardized cognitive and achievement tests selected by the District are designed to test disabilities, rather than tease out abilities that may be masked by disabilities.[45] Plaintiff's reliance, however, is misplaced. Dr. Barenbaum's opinion underscores the IDEIA's requirements and supports the District's 2011 reevaluation. As provided by regulation, testing is done to "assess the child in all areas related to the suspected disability." This is exactly what the District did, taking into account H.G.'s disability and evaluating H.G.'s academic, cognitive, functional, and behavioral performances in a regular education classroom. Contrary to Plaintiff's assertion, the record does not support a finding that the District violated the IDEIA when conducting the 2011 reevaluation of H.G. The District's 2011 reevaluation was comprehensive and appropriately completed over a span of two months. Additionally, consistent with the Magistrate Judge's finding, the record does not contain any contrary or non-testimonial evidence to justify a departure from the Hearing Officer's determination that the District's 2011 reevaluation did not violate the IDEIA. This Court is cognizant that it is not the job of the court to dictate educational methods to special education experts. *See Rowley*, 458 U.S. at 208 ("[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.") (citations and footnotes omitted); *L.R. v. Manheim Twp. Sch. Dist.*, 540 F.Supp.2d 603, 618 (E.D. Pa. 2008) ("The Court is not properly equipped to follow Plaintiff into the thicket of methodological debate . . . [t]herefore, the Court

---

[43] §300.304(c)(3).

[44] §300.304(c)(4).

[45] *See* Decision 18; N.T. 1851, 1873.

17

will not independently review the methodology of the testing underlying [plaintiff's] IEP."). Here, Plaintiff has not shown that the District's 2011 reevaluation was inappropriate. Therefore, Plaintiff's Objection 11 is overruled.

## The School District's Proposed 2012 IEP

In his Objections, Plaintiff contends that the District's proposed 2012 IEP does not provide H.G. meaningful educational benefits or a FAPE in the *Least Restrictive Environment* ("LRE"). To address these issues and whether the District's proposed 2012 IEP was appropriate and did not violate the IDEIA, a brief review of the 2009 IEP is necessary.

The 2009 IEP provided that H.G. be instructed entirely in grade level curriculum and that he spend 81 percent of the day in the regular education classroom. Modifications and supplemental aides and services were described in 37 items of SDI, which included, *inter alia*, alternate assessments with questions presented in a particular manner, choice of order for completing academic tasks, study guides for tests at least four days in advance of the test, requiring only as many questions as needed to demonstrate mastery, presentation of a starter sound to engage memory, not requiring H.G. to answer certain types of questions, and limiting the number of items presented on a page.[46]

The District's proposed 2012 IEP, based upon the 2011 reevaluation results, generally includes reading goals for decoding, identifying concepts of print and deriving meaning from text (comprehension) and for identifying narrative elements, as well as an additional language arts goal for writing sentences using weekly spelling words;[47] math goals, which include demonstrating a basic understanding of the relationship between numbers and quantities and

---

[46] Decision ¶42; S-1 20, 21, 30-34.
[47] Decision ¶43; S-33 22-25.

18

telling time on analog and digital clocks to the hour and half hour;[48] and behavior goals which include those for self-advocacy and remaining on task in the classroom with a reduced level of re-direction prompts, as well as a positive behavior support plan, speech/language and occupational therapy goals.[49] The 2012 IEP also changed the level of H.G.'s learning support services from itinerant[50] to supplemental[51] and provided for the replacement of reading/language arts and math instruction in a special education setting, with inclusion in grade level science and social studies classes. It reduces, by 25 percent, H.G.'s time in the regular education setting from 81 percent of the school day to 56 percent.[52]

### a. Meaningful Educational Benefit (Objection 6)

In IDEIA matters, an IEP need not maximize the potential of a disabled student but, rather, must provide "meaningful" access to education and, after consideration of the child's potential, confer "some educational benefit" upon the child for whom it is designed. *N.E.*, 172 F.3d at 247 (citing *Rowley*, 458 U.S. at 200, 202) (rejecting a bright-line rule on the amount of benefit required of an appropriate IEP in favor of an approach requiring a student-by-student analysis that carefully considers the student's individual abilities)). The IDEIA "calls for more than a trivial educational benefit." *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 182 (3d Cir. 1988). When students display considerable intellectual potential, the IDEIA requires "a great deal more than a negligible [benefit]". *Id.*[53]

---

[48] Decision ¶44; S-33 26, 27.

[49] Decision ¶45; S-33 28-34, 46-50.

[50] Special education supports and services provided by special education personnel for 20 percent or less of the school day. S-33 40.

[51] Special education supports and services provided by special education personnel for more than 20 percent of the school day but less than 80 percent of the school day. S-33 40.

[52] Decision ¶46; S-33 40, 41.

[53] The Court in *Polk* referred to the IDEIA's predecessor, the EHA.

Plaintiff objects to the Magistrate Judge's finding and the Hearing Officer's conclusion that the 2012 IEP provided H.G. with a FAPE. Plaintiff contends that the proposed 2012 IEP contains certain goals that H.G. had already mastered, thus, depriving H.G. of meaningful educational benefit (Objection 6). However, Plaintiff provides no legal authority, nor could this Court find any, to support the contention that an IEP does not confer any meaningful educational benefit if some of its goals are overly basic. Nevertheless, as noted by the Magistrate Judge, the Hearing Officer had ample evidence upon which to find the proposed 2012 IEP was not too basic and did, in fact, afford H.G. a meaningful educational benefit. This conclusion was based, in part, on H.G.'s demonstrated potential reflected in the 2011 reevaluation results, which revealed that H.G.'s intellectual potential would be best served by the District's proposed 2012 IEP. The reevaluation included reports from H.G.'s teachers who reinforced that H.G. has a low level of basic academic skill in reading and mathematics, limited ability to apply acquired skills consistently, and a significant need for direct, systematic instruction at a modified pace; reading test results which revealed that H.G. lacked "basic decoding, sight word and comprehension strategies, and [became] frustrated at the pre-primer level;" and a report from H.G.'s math specialist that concluded that H.G. tested at approximately the first or second grade level. Additionally, despite H.G. exhibiting relative strengths in vocabulary, the District's speech pathologist reported that H.G. had difficulty applying vocabulary skills. Prior to the 2011 reevaluation, H.G.'s teachers had requested curriculum materials at the pre-kindergarten or first grade level.[54]

To refute some of the reevaluation results, Plaintiff references the testimonies of Parent and Dr. Barenbaum, who opined that several enumerated goals in the 2012 IEP are too easy and, therefore, deprive H.G. of meaningful educational benefits. However, this argument is faulty as it

---

[54] R & R 23-24.

is contradicted, in part, by one of Plaintiff's own witnesses, Ms. Walters, who testified that H.G. comprehends texts that they read together at a third grade level, that H.G.'s decoding skills are at a second grade level,[55] and that H.G.'s progress does not comport with the goals in the 2009 IEP (H.G.'s fourth grade). Although Parent might believe that H.G. already mastered certain goals, as suggested by Ms. Waters, this may not be the case.

The appropriateness of an IEP is a question of fact. *D.S.*, 602 F.3d at 564. Based upon the totality of the administrative record, this Court finds that the District's proposed IEP was reasonably calculated to provide significant learning and to confer a meaningful, and more than just a *de minimis*, educational benefit. *See, e.g., N.E.*, 172 F.3d at 247 (citing *Polk*, 853 F.2d at 182, 184, for the holding that the IDEIA "requires a satisfactory IEP to provide 'significant learning' and confer 'meaningful benefit.'"); *see also Rowley*, 458 U.S. at 206-07 (finding that (1) if the state has complied with the procedures set forth in the act and (2) if the IEP is reasonably calculated to enable the child to receive educational benefits, the state has complied with the IDEIA and the courts can require no more). Therefore, the objection to the Magistrate Judge's determination and the Hearing Officer's finding that the District has complied with the obligations imposed by the IDEIA in proposing the 2012 IEP, is without merit. Plaintiff's Objection 6 is, thus, overruled.

### b. Least Restrictive Environment ("LRE") Requirement (Objections 9, 15, 16)

Next, Plaintiff objects to the District not providing H.G. a FAPE in the *Least Restrictive Environment* ("LRE"), or for not "mainstreaming" H.G.[56] Specifically, Plaintiff claims that the

---

[55] Decision ¶40; N.T. 1492.

[56] To discourage educational segregation of children with disabilities from their nondisabled peers, the IDEIA's mainstreaming requirement provides, more specifically: "[t]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs

District did not accommodate H.G. in the general education environment during the development of the 2012 IEP (Objection 9); improperly considered SDI in H.G.'s 2009 IEP (Objection 15); and concluded that H.G. cannot benefit from regular classroom education (Objection 16).

The concept of LRE is "one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *S.H.*, 336 F.3d at 265 (quoting *Scott P.*, 62 F.3d at 535). Undoubtedly, a central goal of the IDEIA is that every child receives a FAPE. 20 U.S.C. §1400(d)(1)(A); *Lebron*, 769 F.Supp.2d at 797. Thus, courts measure whether the FAPE requirement is met by assessing whether a child's IEP is "reasonably calculated to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *P.S.*, 381 F.3d at 198 (quoting *Polk*, 853 F.2d at 181); *see also Rowley*, 458 U.S. at 189. As discussed, to be satisfactory, an "IEP must provide 'significant learning' and confer 'meaningful benefit.'" *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Polk*, 853 F.2d at 182, 84). Additionally, an IEP must provide an explanation when a child does not participate with nondisabled children in the regular classroom setting. 20 U.S.C. §1414(d)(1)(A)(i)(V).

The statutory presumption that children should be taught with their nondisabled peers can seem at odds with the IDEIA's goal of providing an appropriate program for a child's unique needs. *Lebron*, 769 F.Supp.2d at 799; *Oberti*, 995 F.2d at 1214. The Court in *Oberti* observed that the "key to resolving this tension appears to lie in the school's proper use of 'supplemental aids and services' . . . which may enable the school to educate a child with disabilities for a

---

only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. §1412(a)(5)(A).

majority of the time within a regular classroom, while at the same time addressing that child's unique educational needs." *Oberti*, 995 F.2d at 1214.

Acknowledging that the IDEIA leaves educational policy decisions to the state, *Oberti* adopted a two-part test to assess compliance with the statutory LRE requirement. First, the court must determine whether the school can educate the child in a regular classroom with the use of supplementary aids and services taking into account several factors: (1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of other students in the class. *Hannah L. v. Downingtown Area Sch. Dist.*, 2014 WL 3709980, at *4, slip op. (E.D. Pa. Jul. 25, 2014) (citing *Oberti*, 995 F.2d at 1217-18). Second, if the court determines that a segregated classroom setting is appropriate for the disabled child, and "placement outside of a regular education is necessary for the child's educational benefit," the court must also determine whether the school is mainstreaming the child to the maximum extent possible. *Oberti*, 995 F.2d at 1215 (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989)).

The IDEIA's mainstreaming requirement, however, does not demand that a child remain in a regular education classroom if doing so would jeopardize the student's ability to achieve a meaningful educational benefit. *Greenwood v. Wissahickon Sch. Dist.*, 571 F.Supp.2d 654, 663 (E.D. Pa. 2008). Thus, inclusion with non-disabled students is not appropriate when, even with the use of supplementary aids and services, it precludes a disabled child from obtaining an educational benefit. *See* 20 U.S.C. §1412(a)(5)(A). Further, when a school has "given no serious consideration to including the child in a regular class with such supplementary aids and services

23

and to modifying the regular curriculum to accommodate the child, then it has most likely violated the IDEIA's mainstreaming directive." *Oberti*, 995 F.2d at 1216. However, before applying the *Oberti* two-prong analysis, it must *first* be determined whether the proposed IEP is satisfactory, *i.e.*, provides access to meaningful educational benefit, which cannot be "bootstrapped" with the LRE requirement. *See S.H.*, 336 F.3d at 272 ("The School District cannot bootstrap the meaningful educational benefit with the LRE requirement."); *see also Ridgewood*, 172 F.3d at 249 ("The 'IDEA requires that disabled students be educated in the least restrictive *appropriate* environment.'") (emphasis in original). Here, as previously discussed, this Court has found that the District's proposed 2012 IEP is appropriate and provides H.G. access to meaningful educational benefits.

Consistent with the first prong of the *Oberti* analysis, this Court must determine whether the District made reasonable efforts to accommodate H.G. with the use of supplementary aids and services. The modifications and supplemental aids and services used in the 2009 IEP are described in the 37 items of the SDI. According to the author of the 2012 IEP, the team discussed the modifications and supplemental aids and services offered in the 2009 IEP, which of these were effective, and which of the modifications and supplemental aids and services should be removed in the proposed 2012 IEP.[57] Clearly, consideration of the effectiveness of the SDI in the 2009 IEP, an IEP that had been determined to be appropriate and with which Parent agreed, was proper in deciding which SDI to include in the proposed 2012 IEP. While the discussion resulted in a reduced number of SDI interventions, the 2012 IEP maintained many of the same interventions from the 2009 IEP, *e.g.*, cloze sentence questions, curriculum modifications, rephrasing, visual clues, graphic organizers, study guides, and "chunking" of materials to help

---

[57] N.T. 865:3-15.

24

H.G. understand content.[58] Additionally, the February 12, 2012 notes of the IEP team meeting reveal that accommodations were provided, *albeit,* they were not successful; for example: H.G.'s math teacher attempted to use strategies provided by Parent, without success, but noted H.G.'s strengths with manipulatives;[59] and H.G.'s language arts teacher noted some success with spelling but even with the use of scribing and instruction with the reading specialist and one-to-one aide, H.G. experienced difficulties writing and reading in the general classroom.[60] Based on the totality of relevant evidence, the Magistrate Judge correctly found that the District considered and undertook adequate steps to mainstream H.G. in the general education classes during the development of the 2012 IEP. Therefore, Plaintiff's Objections 15 and 9 are overruled.

Plaintiff objects to the Magistrate Judge's endorsement of the Hearing Officer's conclusion that H.G. cannot benefit from being educated in the general education environment (Objection 16). Under the second factor in the first prong of the *Oberti* analysis, a court must determine the educational benefits available to the child in a general education class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class. *Oberti*, 995 F.2d at 1216. Such a determination requires heavy reliance on the testimony of educational experts and special attention to the unique benefits the child may obtain from integration in a regular classroom which cannot be achieved in a segregated environment, *i.e.*, the development of social and communication skills from interaction with nondisabled peers. *Id.*

The Hearing Officer determined that H.G. has not benefitted from regular education as far as H.G.'s potential in math and language arts. This determination was based, in part, on H.G.'s standardized test scores, H.G.'s heightened anxiety in academic performance, and

---

[58] *See* S-11 35.

[59] S-39 6-7.

[60] *Id.* at 8-9.

25

comments from H.G.'s instructors that H.G. requires direct, modified instruction; *to wit*: H.G.'s math teacher reported that H.G. continued to struggle with the most basic concepts in math class and H.G. would frequently become frustrated and need to leave the room;[61] and H.G.'s language arts teacher noted that H.G. would hold his books upside down and take scribbled notes to feel like a part of the class but failed to make academic or social gains in the regular education classroom.[62] Even Plaintiff's own witnesses underscore how H.G. would benefit in a segregated setting – Dr. Barenbaum testified that H.G. would do better in a smaller, more supportive classroom environment than in a general education classroom,[63] and Ms. Walters described H.G.'s ability to succeed in academic tasks with individualized, one-to-one instruction.[64]

The third factor in the first prong of the *Oberti* analysis requires consideration of the possible negative effects of mainstreaming H.G. on the other students in the regular classroom. *Id.* at 1217. As examples of the possible negative effects, H.G.'s language arts teacher reported H.G. as being loud and disruptive with escalating behaviors, such as calling out and flapping his hands, which also caused H.G. to suffer socially.[65] The social studies teacher noted that H.G. would repeatedly call out for attention when excited, with "little understanding that others are either asking questions or waiting for responses."[66] Moreover, while it was reported that H.G. appears to enjoy being around non-disabled peers and attempts to model behavior after them,[67] H.G.'s behavior in the academic setting demonstrates that a "small structured environment," as suggested by Dr. Barenbaum, would be conducive to H.G. as well as to H.G.'s non-disabled peers. In fact, Dr. Barenbaum suggested that "[a] larger classroom or a regular classroom with

---

[61] S-45 44.
[62] *Id.*
[63] Decision ¶39.
[64] *Id.* at ¶41.
[65] S-45 43.
[66] *Id.* at 44.
[67] *Id.*

26

special education support (inclusion) is not recommended as an appropriate learning environment . . . because it places unnecessary demands on an already compromised learning system."[68] As a final comment, this Court notes that the only people present during Dr. Barenbaum's evaluation of H.G. were Dr. Barenbaum and Parent. The fact that H.G. scored higher academically *outside* of a regular classroom environment does not correlate with Parent's desire, or the realistic possibility, of mainstreaming H.G. to the extent Parent suggests.

The second prong of the *Oberti* analysis requires consideration of whether the District has mainstreamed H.G. to the maximum extent possible in the proposed 2012 IEP. *Id.* at 1218. Here, in the proposed 2012 IEP, the District determined that H.G. could obtain meaningful educational benefit by being mainstreamed in social studies and science (with the provision of supplementary aids and services), lunch, electives, and recess. H.G. would be in special education for language arts and math. Thus, while the 2012 IEP reduced the amount of time spent in the general education classroom, it did not completely eliminate it; rather, the IEP provides for 56 percent of the school day in the regular classroom.[69] As supported by the record, the Hearing Officer's decision, recommended by the Magistrate Judge to be upheld, properly concluded that H.G. cannot benefit from being educated entirely in a general education environment. The District's determination of the amount of mainstreaming for H.G. was appropriately made with sound judgment, with direct input from H.G.'s instructors, and based upon the results of its appropriate reevaluation of H.G. This Court finds that the factors outlined in *Oberti* were aptly considered by the District and, therefore, overrules Plaintiff's Objection 16.

---

[68] P-11 16-17.
[69] S-33 40, 41.

27

*Plaintiff's Rehabilitation Act ("RA") and
Americans with Disabilities Act ("ADA") Claims (Objections 12, 13)*

Plaintiff claims that the Magistrate Judge improperly invoked the IDEIA's exhaustion requirement when refusing to consider evidence of the District's failure to implement SDI in the 2009 IEP and in H.G.'s sixth grade (2011-2012), an alleged failure that underlies Plaintiff's ADA and RA claims (Objections 12, 13). Specifically, Plaintiff asserts that the District (1) violated §504 of the RA in attempting to exclude H.G. from certain general education classes due to H.G.'s disability, denying H.G. the benefits of those programs and activities, and (2) violated the ADA when it failed to provide H.G. with effective supplementary aids and services, such as Assistive Technology and, thus, deprived H.G. of an equal opportunity to public education. In essence, Plaintiff disagrees with the Magistrate Judge's determination that Plaintiff raised the RA and ADA claims for the first time on appeal and objects to the recommendation that this Court dismiss the RA and ADA claims for lack of subject matter jurisdiction, as unexhausted claims, not presented at the administrative level.

Generally, exhaustion is necessary for an IDEIA claim. *See* 20 U.S.C. §1415(f); *Colon*, 443 F.Supp.2d at 668. Courts have further held that to the extent a party seeks relief that is available under the IDEIA, the Act's administrative remedies must be exhausted. *R.R. v. Manheim Twp. Sch. Dist.*, 412 F.App'x 544, 550 (3d Cir. 2011) ("[F]or an ADA or Rehabilitation Act damages claim to survive the exhaustion doctrine, it must be based on a set of circumstances for which IDEIA does not provide or contemplate a remedy."); *Hesling v. Havon Grove Sch. Dist.*, 2010 WL 2649909, at *2 (E.D. Pa. Jun. 30 2010) (finding exhaustion of administrative remedies required for ADA and §504 claims where relief is "available under the IDEIA") (internal citation omitted). Exhaustion, however, may be excused where recourse to the administrative proceedings would be futile or inadequate, the issue presented is purely a legal

28

question, or the administrative agency cannot grant the requested relief. *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). None of the exceptions to the exhaustion requirement apply here.

To support the contention that exhaustion is not required, Plaintiff cites to *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F.Supp.2d 282, (M.D. Pa. 2008), which holds that exhaustion of administrative remedies would be futile where a student with disabilities does not challenge the substance of his IEP but rather its implementation by the school district. *Id.* at 294-295. As discussed, however, the central issues before the Hearing Officer involved the *appropriateness*, not the implementation, of the proposed 2012 IEP. Thus, *Derrick F.* is distinguishable, and its holding inapplicable.

The question of whether the IDEIA's administrative process must be exhausted before bringing claims in federal court depends on whether the parties could have asserted the claims under the IDEIA. Intertwined with this inquiry is whether the claim could have been remedied by the IDEIA's administrative process. *Batchelor*, 759 F.3d at 273 (quotation marks omitted). Under §504 of the RA, the IDEIA administrative process offers relief for a denial of a FAPE because it relates to the educational impact of the alleged discrimination. *See M.M. v. Tredyffrin/Easttown Sch. Dist.*, 2006 WL 2561242, at *8 (E.D. Pa. Sept. 1, 2006) ("Plaintiffs' Section 504 claim is within the ambit of the IDEA administrative process because Plaintiffs assert that Defendants' discrimination, based on M.'s handicap, interfered with his education and led to the denial of a FAPE."). Similarly, under the ADA, relief can be obtained through the IDEIA's administrative proceedings when a plaintiff seeks general injunctive relief ordering the school district to consider appropriate auxiliary aids and services. *See Swope v. Cent. York Sch. Dist.*, 796 F.Supp.2d 592, 600 (M.D. Pa. 2011) ("The case law is clear that various forms of

29

equitable relief, including the issuance of a declaratory judgment, can be obtained through the IDEIA's administrative proceedings").

Therefore, because the relief requested by way of Plaintiff's ADA and RA claims is available through the IDEIA's administrative process, and because the issue before the Hearing Officer was the substance, *i.e.*, the appropriateness, and not the implementation of H.G.'s 2012 IEP, this Court agrees with the Magistrate Judge's conclusion that Plaintiff should have raised the ADA and RA claims at the administrative level. Having failed to do so, Plaintiff's RA and ADA claims are not exhausted. Thus, Plaintiff's Objection 12 is overruled. As previously addressed (*see "Least Restrictive Environment Requirement," supra* at 21, 24), SDI was considered and provided to H.G. in the sixth grade under the 2012 IEP. No further discussion is needed. Plaintiff's Objection 13 is overruled.

### c. *Procedural Versus Substantive Violations (Objections 7, 8)*

Plaintiff objects to the Magistrate Judge's conclusion that the District's obligations to (1) develop appropriate goals for H.G. in the 2012 IEP and (2) consider the supplementary aids and services that could be provided to H.G. as an alternative to removal from the regular classroom, were procedural, not substantive, considerations under the IDEIA and, thus, did not invalidate the 2012 IEP (Objections 7 and 8). A procedural violation is actionable under the IDEIA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits. *M.R.*, 680 F.3d at 274 (citing *D.S.*, 602 F.3d at 565); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007).

Under the implementing regulations, substantive harm occurs only if the preponderance of the evidence indicates that:

> [T]he procedural inadequacies (i)[i]mpeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-

30

making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of the educational benefit.

34 C.F.R. §300.513(a)(2); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 67 (3d Cir. 2010). In concluding that the IEP's failure to articulate adequate goals is a procedural defect not actionable in this case, the Magistrate Judge cites to *Coale v. State Dept. of Educ.*, 162 F.Supp.2d 316 (D. Del. 2001) ("Before an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education . . . or caused a deprivation of educational benefits.") (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) (citations omitted)). This Court remarks that the "procedural flaws" referenced in *Coale*, however, did not involve the *content* of an IEP but, rather, involved the court's inability to ascertain the date of the IEP in question and additional information that was not required, such as documentation of the state's plans for the disabled student's teachers to adapt concepts from the prior year's IEP to the current IEP, or a description of how the student was to use Assistive Technology to achieve his goals. *See Coale*, 162 F.Supp.2d at 334. Hence, this Court opines that the Magistrate Judge's reliance on the holding in *Coale* is misplaced, for it is established that a challenge to the *content* of an IEP, in this instance H.G.'s goals, implicates the IDEIA's *substantive* requirements, not the procedural requirements. *D.S.*, 602 F.3d at 565 (emphasis provided). Therefore, the Magistrate Judge's finding that the IEP's failure to articulate goals is a procedural defect was incorrect, and for this reason only, this Court sustains Plaintiff's Objection 7. This Court has concluded that the proposed 2012 IEP does provide access to meaningful educational benefits to H.G. and was properly derived from the 2011 reevaluation results. Thus, the Magistrate Judge's error is harmless and does not alter this Court's findings.

Likewise, Plaintiff argues that the 2012 IEP fails because the District neglected to discuss Assistive Technology as a means of accommodating H.G. in the regular classroom and,

31

therefore, objects to the Magistrate Judge's conclusion that the District's obligation here was merely procedural and not substantive (Objection 8). As stated, a challenge to the *content* of an IEP, which includes a challenge to whether a student needs Assistive Technology devices and/or services, implicates the IDEIA's *substantive*, not procedural, requirements. *D.S.*, 602 F.3d at 565. Based on the same reasoning that this Court sustains Plaintiff's Objection 7, Plaintiff's Objection 8 is also sustained.

Notwithstanding, although the District mistakenly believed that it was not required to perform an Assistive Technology assessment for H.G., the District *did* complete such an assessment in January and February 2013.[70] This assessment resulted in an Assistive Technology Team Action Plan that identified several interventions and the individuals who would implement them, applied as of March 2013.[71] Even though the District incorrectly categorized its failure to consider Assistive Technology a procedural rather than substantive obligation, this confusion is of no consequence and does not affect this Court's finding.

### *Additional Evidence (Objections 2, 3, 4, 5, 10, 14, 17)*

The remaining objections pertain to the contention that the Magistrate Judge refused to admit the entirety of Plaintiff's supplemental evidence offered after the close of administrative proceedings, purportedly to enable the court to determine whether H.G. is presently receiving an appropriate education.

As stated, the IDEIA allows for "additional evidence at the request of a party." 20 U.S.C. §1415(i)(2)(c)(ii). However, the admissibility of additional evidence in an IDEIA judicial review proceeding is left to the discretion of the trial court. *I.K. ex rel. B.K. v. Sch. Dist. of Haverford Twp.*, 961 F.Supp.2d 674, 692 (E.D. Pa. 2013) (quoting *D.K.*, 696 F.3d at 253; *Susan N.*, 70 F.3d

---

[70] Decision (Order) 29.
[71] R & R 29 n. 22.

at 760). A court must consider the party's request to admit additional evidence and not summarily reject it, *Susan N.*, 70 F.3d at 760, and it should not automatically disallow testimony from all who did, or could have, testified at the administrative hearing. *Id.* at 759-60. Further, in rejecting an automatic rule that would disallow supplemental testimony from all who already testified at an administrative hearing, the Third Circuit encourages unfettered truth-seeking by erring on the side of evidentiary inclusion. *I.K.*, 961 F.Supp.2d at 693 (citing *Myers v. Cnty. of Orange*, 157 F.3d 66, 75 (2d Cir. 1998)).

Conversely, a court may not grant carte blanche to a party to introduce evidence that was not offered at the administrative hearing and, thus, render the administrative proceedings a mere formality, which would thwart the notion of cooperative federalism enshrined by the IDEIA.[72] Instead, the Third Circuit has charged courts with evaluating whether the proffered evidence would assist the court and is relevant, non-cumulative, and useful in determining whether Congress' goal has been reached for the child involved. *Antoine M. v. Chester Upland Sch. Dist.*, 420 F.Supp.2d 396, 402 (E.D. Pa. 2006) (citing *Susan N.*, 70 F.3d at 760); *see, e.g.*, *Robert B. v. West Chester Area Sch. Dist.*, 2005 WL 2396968, at *9-10 (E.D. Pa. 2005) (disallowing proffered testimony that would repeat earlier testimony and would offer no additional insight into the "reasonableness of the school district's original decision") (quoting *Susan N.*, 70 F.3d at 762); *Alex K. v. Wissahickon Sch. Dist.*, 2004 WL 286871, at *7 (E.D. Pa. Feb. 12, 2014) (two witnesses were excluded because they would repeat administrative hearing testimony, three new

---

[72] The resolution of disputes under the IDEIA, among other things, involves levels of both state and federal review. 20 U.S.C. §1415; *Antoine M. v. Chester Upland Sch. Dist.*, 420 F.Supp.2d 396, 402 n. 9 (E.D. Pa. 2006).

witnesses excluded because testimony would not assist court in determining whether the school district met its legal obligations).[73]

Further, the court should ensure that the admission of the additional evidence will be consistent with the "general framework of deference to state decision-makers that is dictated by the IDEIA." *Susan N.*, 70 F.3d at 758. In doing so, a court must look at the evidence or testimony proffered in the context of the case. Each analysis should be individualized to the particular circumstances before the court. *Antoine M.*, 420 F.Supp.2d at 402. The appropriateness of an IEP should be assessed *as of the time it was made*, and after-acquired evidence about how a child actually fared subsequent to a school district's action "may be considered only with respect to the *reasonableness* of the district's decision at the time it was made." *D.S.*, 602 F.3d at 565 (quoting *Susan N.*, 70 F.3d at 762 (emphasis in original)).

Additionally, the court must assess the party's justification for not proffering the evidence at the administrative hearing, *Susan N.*, 70 F.3d at 760, and ensure that the party is not attempting to "leapfrog the agency proceedings." *Antoine M.*, 420 F.Supp.2d at 403 (citation omitted). A non-exhaustive list of factors that a court may take into account when making this determination includes: (1) the existence of a procedural bar which prevented the introduction of the proffered evidence below, such as a limitations period or a restriction on the number of witnesses;[74] whether the evidence was deliberately withheld at the administrative level for

---

[73] Notably, under Section 505 of the Administrative Agency Law, 2 Pa. C.S. §505, administrative agencies are not bound by the technical rules of evidence, and all relevant evidence of reasonably probative value may be received. Where the record reveals the evidence sought to be introduced is not reasonably probative, the evidence may be excluded. *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 742, 750 (Pa. Cmwlth. 2010) (citing *News-Chronicle Co. v. Pa. Human Relations Comm'n*, 672 A.2d 500 (Pa. Cmwlth. 1996)).

[74] *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901-02 (7th Cir. 1996) (because party presented no evidence of procedural infirmities at the administrative level, district court did not abuse discretion in prohibiting the introduction of additional evidence).

34

strategic reasons;[75] whether the introduction of the additional evidence at the district court level would be prejudicial to the other party, *i.e.*, if the additional evidence would interfere with the adverse party's ability to rebut it; and the potential impact on the administration of justice, *i.e.*, whether the party seeks to introduce a new theory under which it will be entitled to relief.

Guided by the above standards, this Court evaluates Plaintiff's Objection to the propriety of the Magistrate Judge's recommendations with respect to the Plaintiff's proffered additional evidence.[76] In the R & R, the Magistrate Judge accepted the post-administrative hearing evidence that was considered relevant if it shed light on the reasonableness of the District's decision at the time it recommended the proposed 2012 IEP, not whether the placement *presently* suits H.G.[77] Thus, the Magistrate Judge recommended that this Court admit and consider the following exhibits, and concluded that these exhibits were relevant and provided additional insight into the District's thought process regarding H.G.'s needs and capabilities over time, and were minimally probative as to the reasonableness of the District's proposed 2012 placement:[78]

- Exhibit 5, *in part* (October 25, 2012 email produced by the District; those portions only pertaining to the Assistive Technology Assessment conducted in January and February 2013 and the resulting March 2013 Assistive Technology Plan, consistent with the Hearing Officer's decision).

- Exhibit 9 (notes from the March 13, 2013 IEP meeting, ordered by the Hearing Officer).

- Exhibit 10 (the resulting March 13, 2013 IEP for H.G.'s seventh grade school year (2012-2013)).

- Exhibit 19 (February 19, 2014 draft IEP).

---

[75] *See Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 998 (1st Cir. 1990) (district court should exclude evidence that party purposely chose not to present at the administrative level).

[76] The Magistrate Judge recommended that this Court reject the District's proffered expert report by Catherine A. Fiorello, Ph.D., N.C.S.P., A.B.P.P., which purports to review the correctness of the District's 2011 reevaluation and 2012 IEP without justification as to its submission beyond the close of the administrative proceedings. The District issued no objection to the Magistrate Judge's recommendation; therefore, this Court will not address whether an error was committed in its exclusion.

[77] R & R 41 n. 24.

[78] *Id.* at 43.

- Exhibit 22 (March 25, 2014 Notice of Recommended Educational Placement ("NOREP")).

The Magistrate Judge further recommended that the remaining exhibits be excluded as either irrelevant or cumulative of the IDEIA record. This Court agrees with the Magistrate Judge's recommendations (1) since appropriateness of the 2012 IEP is a central issue and (2) the excluded evidence was irrelevant and cumulative. No evidentiary error was committed by the Magistrate Judge, as discussed below.

Plaintiff also seeks to admit evidence of H.G.'s progress in general education classes with supplementary aids and services; in particular, coursework from H.G.'s seventh and eighth grades (2012-2013, 2013-2014, respectively) which purport to show that with SDI, H.G. receives meaningful educational benefit in general education classes. Plaintiff objects to the Magistrate Judge's recommendation to exclude this evidence (Objections 4, 14), as well as evidence of the District's continual failure to consider the full range of supplementary aids and services and make reasonable efforts to support H.G. in regular classes (Objection 10).

The Magistrate Judge found that H.G.'s coursework produced under the 2009 IEP, which includes coursework done contemporaneously with the 2009 IEP and completed six years later under the same 2009 IEP, is inadmissible and not relevant to show whether the proposed *2012 IEP* is appropriate and in compliance with the IDEIA. Even if admissible, the evidence does not favor Plaintiff since portions of the administrative record reveal that, even with accommodations, H.G. continues to perform poorly in the general education classroom.[79] This Court agrees with the Magistrate Judge's legally sound reasoning and finds that the recommendation to exclude this evidence is appropriate. Therefore, Plaintiff's Objections 4 and 14 are overruled.

---

[79] R & R 47 n. 2; *see also supra* at 24.

36

In addition, Plaintiff's contention that the Magistrate Judge refused to address the District's *continuing* failure to consider the full range of supplementary aids and services and to make reasonable efforts to support H.G. in regular classes (Objection 10), is also without merit. A central issue on appeal is whether the proposed 2012 IEP is appropriate; thus, consideration of the District's purported continuing failure to consider accommodations for H.G. beyond the 2012 IEP, especially when H.G.'s current educational program is being implemented under the 2009 IEP, is immaterial. Therefore, Plaintiff's Objection 10 is overruled.

Plaintiff next argues that evidence of H.G.'s progress reports from the seventh grade (2012-2013) are relevant to show that H.G. benefits from being in general education classes, and objects to the exclusion of the evidence which includes daily progress logs and an IEP progress report, as irrelevant and cumulative (Objection 5). The District argues that the IEP Progress Report for 2013, in particular, is irrelevant because it refers to H.G.'s goals under the 2009 IEP. In addition to finding that the record supports the fact that H.G. could not benefit from being in general education classes for the entire school day, the Magistrate Judge further concluded that evidence of H.G.'s progress is relevant only to show educational benefit gained in an alternative placement; whereas here, H.G. has remained in the same school district pursuant to the 2009 IEP. *See Susan N.*, 70 F.3d at 762 ("Evidence of a child's progress – or lack thereof – *in an alternative placement* may be relevant to the court's determination whether a school district's IEP was appropriate at the time it was drafted.") (emphasis provided). Plaintiff's Objection 5 is overruled.

Plaintiff also objects to the Magistrate Judge's refusal to admit the additional expert report of Julie Causton, Ph.D. (Objection 3).[80] Dr. Causton submitted a report on April 25, 2014,

---

[80] Plaintiff objects to the Magistrate Judge declining to admit additional expert reports, but Plaintiff addresses only Dr. Causton's report in support of the objection.

based on her one-day general education classroom observation of H.G. In her report, Dr. Causton concluded that there was no justifiable reason to move H.G. from the general education environment to a more restrictive setting.[81] Dr. Causton had not testified at the administrative proceedings and Plaintiff provides no justification to offer this untimely expert report. Instead, Plaintiff argues that the *Antoine M.* factors compel this Court to admit Dr. Causton's report and that the District could have requested a hearing to cross-examine her testimony and offset any prejudice. Notwithstanding, the Magistrate Judge pointed out that Dr. Causton's conclusions and recommendations, having been made in 2014, do not properly reflect consideration of whether the District's 2012 IEP is appropriate and, thus, deemed the report irrelevant. This Court agrees, and overrules Plaintiff's Objection 3.

Lastly, Plaintiff objects to the exclusion of other additional evidence offered (Objection 17): Exhibits 1, 2, 4, 7, 13, and 19. As to Exhibit 19, the admission of this exhibit was recommended. As to Exhibits 1 and 2, these are affidavits of Plaintiff's counsel and Parent, respectively, the former not being viewed as supplemental evidence by the Magistrate Judge, and the latter only supporting Plaintiff's views on why other proffered evidence is relevant and admissible. Exhibit 4 was deemed irrelevant by the Magistrate Judge because a summary of SDI in the 2009 IEP does not shed light on the District's decisions with regard to H.G.'s educational placement in the proposed 2012 IEP. Exhibits 7 and 13 are reading summary reports by Ms. Walters, offered to show that H.G.'s reading level is far beyond the low level of the goals in the District's proposed IEP. The Magistrate Judge found, however, that this issue was already before the Hearing Officer by way of Ms. Walters' January 2012 reading report and her November 2012 testimony in the due process hearings and was, therefore, cumulative. This Court agrees with the evidentiary evaluation and reasons offered and, therefore, overrules Plaintiff's Objection 17.

---

[81] *See* Exhibit 20. [ECF 27-5].

38

Further, based upon this Court's agreement with the Magistrate Judge's evidentiary recommendations, Plaintiff's Objection 2 is overruled.

Finally, this Court is mindful that H.G. is currently subject to the 2009 IEP (implemented during H.G.'s fourth grade),[82] in accordance with 20 U.S.C. §1415(j), which, during the pendency of these proceedings requires H.G. to remain in the 2009 IEP. It is now the year 2015 and H.G. is in ninth grade. Possibly, the particular services H.G. requires today may not be what were appropriately identified in the 2012 IEP. Therefore, in addition to upholding the findings of the Hearing Officer and consistent with this Memorandum Opinion, this Court directs the immediate implementation of the 2012 IEP, and further directs the parties to convene an IEP team meeting as soon as possible to review the 2012 IEP goals and SDI, including appropriate Assistive Technology, and taking into consideration H.G.'s *present* levels of educational and functional performance and needs, to establish appropriate goals in an updated IEP.

**CONCLUSION**

For the reasons set forth herein, this Court finds that Plaintiff has not shown, by a preponderance of the evidence, that the District's 2011 reevaluation and proposed 2012 IEP are inappropriate or violate the IDEIA. Consequently, Plaintiff's Objections are overruled, in part, consistent with this Memorandum Opinion, and the Magistrate Judge's Report and Recommendation, including the recommendation made as to the ancillary issue of the admission of additional evidence, is approved and adopted. Accordingly, Plaintiff's motion for judgment on the administrative record is denied, and Defendant's motion for judgment on the administrative record is granted. An appropriate Order follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[82] Decision ¶42.